JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PLASTIC-VIEW INTERNATIONAL, INC., | ) ) ) | Case No. CV 14-07295 DDP (MRWx) |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| EASTMAN CHEMICAL COMPANY and SPFILMS, INC., | ) ) ) | |
| Defendants. | ) | [Dkt. No. 23] |

Presently before the court is Defendants' Motion to Dismiss. Having considered the submissions of the parties, the court grants the motion and adopts the following order.

**I.  Background**

Plaintiff Plastic View ATC, Inc. fabricates window shades for use in government air control towers. (Second Amended Complaint ("SAC") ¶ 2.) Plaintiff Plastic-View International sells and supplies commercial window film and tinting products.[1] (SAC ¶ 3.) Defendant Eastman Chemical Company develops and sells window

---

[1] Hereinafter, this Order refers to both Plaintiffs, collectively, as "Plastic View."

tinting films.  (SAC ¶ 4.)  Defendant CPFilms is a wholly-owned subsidiary of one of Eastman's wholly-owned subsidiaries.[2]  (Id.)

Plastic View alleges that it and Eastman "had an over fifty-year business relationship . . . where [Plastic View] purchased and helped develop new products from [Eastman] to be sold to [Plastic View]'s customers.  (SAC ¶ 2.)  The SAC acknowledges that there was no formal contract between the parties, but alleges that the parties' course of dealings "required [Eastman] to supply [window] film and shade product to plaintiff and plaintiff in turn would sell to its customers . . . ."  (SAC ¶ 20.)

Plastic View purchased almost $3 million of product from Eastman between 2008 and 2012.  (SAC ¶ 21.)  In 2011, Plastic View signed a five-year agreement with a customer to provide a certain window film.  (SAC ¶22.)  Although Plastic View's "expectation at a minimum was that [Eastman] would honor their promise to provide product at least for the five year term under which [Plastic View] was contractually obligated to its customers[,}" Eastman stopped providing the product to Plastic View.  (Id.)  Eastman subsequently raised it prices on other products Plastic View bought before terminating the supply of all window film products to Plastic View in January 2013.  (SAC ¶ 26.)

Plastic View's SAC alleges five causes of action, including separate causes of action for breach of contract regarding both and the implied covenant of good faith and fair dealing, and declaratory relief.[3]  Eastman now moves to dismiss.

---

[2] This Order refers to both Defendants as "Eastman."

[3] Plastic View has withdrawn its newly-alleged claim for
(continued...)

**II.  Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Iqbal</u>, 556 U.S. at 678.  Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." <u>Id.</u> at 679.  In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted.  <u>Id.</u> at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." <u>Id.</u> at 679.  Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level."  <u>Twombly</u>, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing

---

[3](...continued)
promissory estoppel.

court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### III. Discussion

As explained in this court's prior Order, the elements of a breach of contract claim are (1) the existence of a contract, (2) performance or excuse for nonperformance, (3) defendant's breach, and (4) damages. Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011); See also Rockridge Trust v. Wells Fargo, N.A., 985 F.Supp.2d 1110, 1141 (N.D. Cal. 2013). A contract may be either express or implied. Cal. Civil Code § 1619. "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." Yari v. Producers Guild of Am., Inc., 161 Cal.App.4th 172, 182 (2008).

In dismissing Plastic View's First Amended Complaint, this court explained that the mere existence of a long-standing supplier-customer relationship was not sufficient to plead the essential terms of a contract. See Unichappell Music, Inc. v. Modrock Production, Inc., No. CV 14-2382 DDP, 2015 WL 546059 at *2 (C.D. Cal. Feb. 10, 2015); Gross v. Symantec Corp., No. C 12-00154 CRB, 2012 WL 3116158 at *11-12 (N.D. Cal. July 31, 2012). The SAC, while acknowledging the lack of any "formal contract," alleges that "several emails between [the parties] memorialize the agreement between the parties." (SAC ¶ 30.) One 2012 e-mail, referencing the departure of an employee, explained that Eastman sought "to be as seamless as possible during this transition period so that you can continue to do your business without problems. In the meantime

our customer service personnel will continue to support your needs." (SAC ¶ 31.) Another Eastman employee wrote that he would provide "a list of products that we can make available to you on a consistent basis along with pricing and lead times. . . . We very much appreciate your ongoing business and look forward to supporting [Plastic View] and helping you grow your business." (SAC ¶ 32.)

As this court stated in its prior Order, the lone allegation of a long-standing business relationship was insufficient to identify the essential terms of any alleged contract, such as the products or quantities to be supplied, any agreed-upon price, or any duration of or means of terminating the supposed supply contract. But, with the exception of some discussion of specific products Eastman could make available for sale, the e-mails do almost nothing to fill in those crucial details. Because the newly-alleged facts about the specifics of the e-mail correspondence between the parties do little to address the deficiencies of the First Amended Complaint, Plaintiffs contract-related claims must be dismissed.

Further, to the extent Plaintiffs' claims are premised upon the five-year agreement referenced in the SAC, they are barred by California's statute of frauds. As an initial matter, the court is unpersuaded, for the reasons stated above, by Plastic View's contention that the statute of frauds is satisfied because the contract is memorialized in the e-mails. California Commercial Code § 2201(1) requires a written contract for the sale of goods priced at $500 or more. Although the SAC is silent as to the price of the goods at issue, as discussed above, Plastic View's reference

5

to nearly $3 million in purchases from Eastman over a four-year period strongly suggests that any agreement that may have existed here concerned goods priced at over $500.

In any event, any unwritten agreement regarding the 5 year term is clearly barred by California Civil Code § 1624(a)(1), which requires written contracts in cases where agreements are not to be performed within one year. Plaintiffs are correct that the bar applies only to contracts which cannot possibly be performed within one year. <u>Abeyta v. Superior Court</u>, 17 Cal. App. 4th 1037, 1042 (1993). Plaintiffs argue that "the Sales Agreement was capable of performance within one year . . . as orders were placed and product supplied on an ongoing basis." (Opp. at 13.) Plaintiffs cannot, however, square that argument with the allegations in the SAC that Eastman bound itself "<u>at least</u> for the five year term under which [Plastic View] was contractually obligated to its customers." (SAC ¶ 22 (emphasis added).) Even if Plaintiff's unnamed customer had not ordered any product in the first year, and Plaintiffs therefore would not have requested any product from Eastman in the first year, there is no indication from the SAC that the Sales Agreement would have terminated.[4] Indeed, as alleged, the contract could not have terminated for "at least" five years, and is therefore invalid under the statute of frauds.

//
//
//

---

[4] At risk of belaboring the point, this same lack of detail regarding the terms of the supposed contract vitiates Plaintiffs' claims for other reasons, described above.

6

**IV.  Conclusion**

    For the reasons stated above, Defendants' Motion to Dismiss is GRANTED.  Plaintiffs' Second Amended Complaint is DISMISSED, with prejudice.


IT IS SO ORDERED.


Dated: January 29, 2016

                                    DEAN D. PREGERSON
                                    United States District Judge